# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 30, 2009

Charles R. Fulbruge III
Clerk

No. 08-30911

LARRY SEAMAN

Plaintiff-Appellant

v.

SEACOR MARINE L.L.C.

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-3354

Before WIENER, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Larry Seaman sued his former employer Defendant-Appellee Seacor Marine, L.L.C., alleging that its negligence caused Seaman's bladder cancer. The district court excluded the testimony of Seaman's only causation expert and granted summary judgment in favor of Seacor. Holding that the district court acted within its discretion in excluding the expert testimony and that Seacor is entitled to summary judgment, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

From 1982 until March 2003, Seaman worked as a captain aboard several of Seacor's vessels. In 2003, Seaman, complaining of hematuria — blood in his urine — went to a doctor. The doctor told Seaman to see a urologist if his urine did not clear. Then, in August 2005, Seaman went to an infectious disease specialist because of continued hematuria. Seaman told the specialist he had been experiencing hematuria and urethral discharge for seven to ten years. The specialist recommended that Seaman see a urologist. When Seaman did so in 2006, the urologist diagnosed Seaman with bladder cancer. Seaman had surgery, and the cancer is currently in remission.

In June 2007, Seaman filed the instant suit in district court alleging that while aboard Seacor's vessels he "inhaled and was otherwise exposed to a host of hazardous and toxic chemicals including drilling mud, caustic soda, barium sulfate, Barite, ammonia, muriatic acid, and others." Seaman pursues his claim under the Jones Act and general maritime law and alleges that he developed bladder cancer as a result of the chemical exposures. Seaman specifically contends that Seacor's negligence caused his injuries. He also alleges that Seacor had a duty to detect his bladder cancer and failed to do so.

Seacor simultaneously filed motions (1) to exclude the testimony of Dr. Perri Prellop, Seaman's sole causation expert and (2) for summary judgment. The district court, holding that Dr. Prellop's opinion was neither factually supported nor scientifically reliable, excluded her testimony. The court then granted summary judgment in Seacor's favor. Seaman filed a motion to alter or amend the district court's judgment, which the court denied.

Seaman timely filed a notice of appeal.

## II. STANDARDS OF REVIEW

"We review the district court's determination of admissibility of expert evidence under *Daubert* for abuse of discretion."[1] "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[2] If the trial court abused its discretion, the harmless error doctrine applies, and we reverse the ruling only if it affected the substantial rights of the complaining party.[3]

Once we make the necessary evidentiary determinations, "[t]hen, with the record defined, we must review *de novo* the order granting judgment as a matter of law."[4]

## III. ANALYSIS

A.    **Exclusion of Dr. Prellop's Testimony**

1.    **Applicable Law**

"Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."[5] A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation.[6]

---

[1] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] *Knight*, 482 F.3d at 351 (internal quotation marks omitted).

[3] *Id.*

[4] *Curtis v. M&S Petrol., Inc.*, 174 F.3d 661, 668 (5th Cir. 1999).

[5] *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996).

[6] *Id.* (demanding not just knowledge but *scientific* knowledge); *Atkins v. Ferro Corp.*, 534 F. Supp. 2d 662, 666 (M.D. La. 2008) (concluding that there was no genuine issue of material fact for trial because "plaintiffs [had] not produced any *expert testimony or report* to establish that[] plaintiffs: (1) were actually exposed to a harmful level of the chemical, or (2) were physically injured by the [chemical] allegedly released from the plant" (emphasis added)), *aff'd* No. 08-30295, 2009 WL 605743, at *1 (5th Cir. Mar. 10, 2009) (per curiam) (unpublished)

Courts use "a two-step process in examining the admissibility of causation evidence in toxic tort cases. First, the district court must determine whether there is *general causation*. Second, if it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible *specific-causation* evidence."[7] "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."[8]

Attempting to establish these requisite facts, Seaman proffered the report and deposition testimony of Dr. Perri Prellop, his only medical-causation expert. As the proponent of Dr. Prellop's testimony, Seaman had the burden of establishing by a preponderance of the evidence that the proffered testimony was admissible.[9] A district court assesses expert testimony under Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

---

("Because plaintiffs presented no expert testimony in support of causation, there is no error in the summary judgment . . . ." (citing *Allen*, 102 F.3d at 199)); *see Templet v. HydroChem Inc.*, 367 F.3d 473, 484 n.15 (5th Cir. 2004) (Dennis, J., dissenting) (emphasizing the need for expert testimony to prove a complex toxic tort case); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 50 (2d Cir. 2004) ("Absent admissible expert testimony on the issue of causation, [a plaintiff is] unable to sustain her burden to prove causation.").

[7] *Knight*, 482 F.3d at 351 (emphases added).

[8] *Id.*

[9] *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) (citing FED. R. EVID. 104(a), cmt.); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[10]

Rule 702 was most recently amended in 2000 in response to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which "charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony."[11] Pursuant to *Daubert*, a trial court ensures that testimony is "supported by appropriate validation — *i.e.*, 'good grounds,' based on what is known."[12] And, "a district court has *broad discretion* to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion."[13]

In carrying out its gate-keeping function, the trial court "ensures that the proffered evidence is both 'reliable' and 'relevant.' Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.' Relevance depends upon 'whether [that] reasoning or methodology properly can be applied to the facts in issue.'"[14]

"[T]he expert's testimony must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[15] "Where an expert's opinion is

---

[10] FED. R. EVID. 702.

[11] Advisory Committee Notes to FED. R. EVID. 702 (2000 Amendments) (citing *Daubert*, 509 U.S. 579 (1993)).

[12] *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 196 (5th Cir. 1996) (quotation omitted).

[13] *Knight*, 482 F.3d at 354 (emphasis added)

[14] *Id.* at 352 (quoting *Daubert*, 509 U.S. at 589, 592–93) (internal citations omitted).

[15] *Id.* at 355 (internal quotation marks omitted).

based on insufficient information, the analysis is unreliable."[16] Still, there is no bright-line standard and when an expert "otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, not the admissibility of the expert's testimony."[17] The Supreme Court has offered a non-exhaustive list of *Daubert* factors that trial courts should consider: "[1] whether the theory or technique the expert employs is generally accepted; [2] whether the theory has been subjected to peer review and publication; [3] whether the theory can and has been tested; [4] whether the known or potential rate of error is acceptable; and [5] whether there are standards controlling the technique's operation."[18]

## 2. District Court Acted Within Its Discretion

Dr. Prellop, a radiation oncologist who completed her residency in radiation oncology in 2006, has never before provided expert testimony. She does not have a particular expertise in bladder cancer and its causes, and, in her career, has only treated three patients diagnosed with bladder cancer.[19] She is also the sister-in-law of Seaman's trial counsel (who continues to represent Seaman in the instant appeal). Dr. Prellop submitted a two-page report that concluded:

---

[16] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009); *see Knight*, 482 F.3d at 355 (stating that if the data relied on by a party's expert "fail[s] to provide a 'relevant' link with the facts at issue, his expert opinion was not based on 'good grounds'").

[17] *Knight*, 482 F.3d at 354 (internal quotation marks omitted).

[18] *Id.* at 351 (citing *Daubert*, 509 U.S. at 593); *see id.* at 355 ("District courts must carefully analyze the studies on which experts rely for their opinions before admitting their testimony.").

[19] Although Seacor challenged Dr. Prellop's qualifications to render an opinion on causation, the district court instead excluded the evidence under the *Daubert* standard. The district court also noted, however, that "[i]t is clear from Dr. Prellop's deposition that she has no specific expertise in the causes or diagnosis of bladder cancer." *Seaman v. Seacor Marine LLC*, 564 F. Supp. 2d 598, 601 n.2 (E.D. La. 2008).

> Mr. Seaman's history of occupational exposure to diesel exhaust and chemicals including aromatic hydrocarbons[, particularly a chemical called Ferox,] put him at increased risk for bladder cancer. Of course, we could never be certain that these occupational exposures were the definite cause of Mr. Seaman's bladder cancer but I have no information suggesting that Mr. Seaman's cancer was caused by other external agents.

Dr. Prellop based her opinion on (1) her "understand[ing] that Mr. Seaman's occupational history includes regular exposure to diesel exhaust and exposure to Ferox at least once a week, twenty-six weeks per year, over more than a decade" and (2) her determination that Mr. Seaman has no risk factor for bladder cancer, e.g., smoking, family history, or age, other than his male gender. To arrive at her conclusion, Dr. Prellop reviewed Seaman's deposition and medical records, the material safety data sheet ("MSDS") for Ferox,[20] and two scholarly articles about the risk factors for bladder cancer. She never saw or spoke with Seaman, whose complaint and deposition testimony mentioned nothing about either Ferox or diesel exhaust. Dr. Prellop based her "understanding" of Seaman's regular exposure to Ferox and diesel exhaust on nothing more than the suggestion to her by Seaman's counsel that another Seacor employee said that Seaman had been exposed to the substances.

The district court determined that Dr. Prellop's assumption of regular exposure without any "facts upon which Dr. Prellop could have possibly surmised exposure levels, rendered her causation opinion mere guesswork."[21] The court also noted that Dr. Prellop never discussed, in either her report or her deposition testimony, the studies on which her two cited journal articles were

---

[20] According to Dr. Prellop, Ferox contains the aromatic hydrocarbons benzene, xylene, and ethylbenzene.

[21] *Seaman*, 564 F. Supp. 2d at 604.

based.[22] In excluding Dr. Prellop's testimony, the district court concluded that her "opinion is neither factually supported nor scientifically reliable."[23] We agree and hold that the district court acted well within its discretion in excluding Dr. Prellop's testimony. Here is why.

First, Dr. Prellop does not establish general causation. Her Ferox-related testimony relies on no scholarly studies and merely recites her opinion that Ferox contains aromatic hydrocarbons, which are known carcinogens. Yet, Dr. Prellop makes no connection between Ferox and *bladder* cancer specifically.[24] And, she provides no clue regarding what would be a harmful level of Ferox exposure.[25] Without some showing of a "statistically significant" link between Ferox and bladder cancer, Dr. Prellop's testimony does not establish general causation for Ferox.[26]

As for her opinion that diesel exhaust causes bladder cancer, Dr. Prellop cites two articles as support: *An Updated Review of the Literature: Risk Factors for Bladder Cancer with Focus on Occupational Exposures* ("*Updated Review*"),[27] and *Projecting Individualized Probabilities of Developing Bladder Cancer in White Individuals* ("*Projecting Probabilities*").[28] *Updated Review* is an overview of bladder-cancer literature which notes that one analysis found that "[w]orkers with high exposure to diesel exhaust" (the term "high exposure" is left

---

[22] *Id.*

[23] *Id.*

[24] *See Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 197 (5th Cir. 1996) (noting that causation evidence of cancer generally — rather than the specific cancer from which the plaintiff suffers — is insufficient).

[25] *See id.* at 199 (making clear that such a showing is required).

[26] *See id.* at 195.

[27] Sandra M. Olfert et al., *Updated Review*, 99 S. MED. J. 1256 (2006).

[28] Xifeng Wu et al., *Projecting Probabilities*, 25 J. CLINICAL ONCOLOGY 4974 (2007).

undefined) have an increased risk of bladder cancer.[29]  The article cautions that research of occupational bladder cancer is complicated because smoking is the main risk for bladder cancer and it is difficult to separate bladder cancer caused by smoking from that caused by occupational exposures.[30]  *Updated Review* mentions nothing about the *level of exposure* that over time might increase one's risk of bladder cancer.

The authors of *Projecting Probabilities* created a model that was "consistent with diesel exhaust exposure . . . having a strong etiologic role in [bladder cancer], with numerous studies showing an excess incidence of [bladder cancer] in truck drivers and those exposed to diesel exhausts."[31]  Like *Updated Review*, *Projecting Possibilities* is silent on the *level of exposure* to diesel exhaust that would be significant.  These articles thus do not assist Dr. Prellop in meeting Seaman's "minimal" burden of establishing by "[s]cientific knowledge . . . the harmful level of exposure to a chemical."[32]  Without any facts that would establish the allegedly harmful level of exposure (or even some link to bladder cancer), as with her Ferox opinion, Dr. Prellop's opinion regarding diesel exhaust does not establish general causation.

Neither does Dr. Prellop establish specific causation.  Seaman makes the contention — with which we disagree — that our opinion in *Bocanegra v. Vicmar*

---

[29] *Updated Review* at 1261.

[30] *See id.* at 1261–62.

[31] *Projecting Probabilities* at 4979.  The Projecting Probabilities model, however, still requires "validation . . . in an external population [as] an essential next step towards practical use in the clinical setting."  *Id.*

[32] *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996); *see also id.* (citing *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1107–08 (8th Cir. 1996) (rejecting an expert's testimony that "was not based on any knowledge about what amounts of [a chemical] involve an appreciable risk of harm to human beings who breathe them")).  *But see Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007) (noting that not every expert must back his opinion with published studies that *unequivocally* support that opinion).

*Services, Inc.*[33] mandates that any shortcomings in Dr. Prellop's opinion go to its weight, not its admissibility. In that vehicle-collision case, the plaintiff used a toxicology expert to testify about the effects of marijuana on a motorist's perception, reaction time, and overall driving ability.[34] Stressing that "[t]he real world . . . does not operate like a controlled study," we held that the expert's testimony was admissible despite unknown variables related to the potency and quantity of the marijuana ingested by the defendant.[35] In *Bocanegra*, the reason that these unknown variables went to the weight and not to the admissibility of the expert's testimony is because the record also contained sufficient exposure information: It was undisputed both that (1) being high on marijuana impairs perception, *viz.*, it *generally* has that effect, and (2) the defendant driver had been high within the relevant twelve-hour window, *viz.*, the *specific* effect.[36] We cautioned that we were "not concluding that a trial court may never exclude testimony in a . . . case based on the fact that unknown variables render the testimony unhelpful to the jury."[37] Instead, we "simply [held] that in th[at] case, the variables d[id] not undermine the expert's testimony to the point that it [was] of no assistance to the jury."[38]

---

[33] 320 F.3d 581 (5th Cir. 2003).

[34] *Id.* at 586. The plaintiff used a separate accident-reconstruction expert to connect impaired driving ability to an increased likelihood of a crash. *Id.*

[35] *Id.* at 588–90.

[36] *Id.* at 587–89.

[37] *Id.* at 589–90 n.5.

[38] *Id.*

Unlike in *Bocanegra*,[39] the unknown variables of the instant case do render Dr. Prellop's testimony unhelpful. Dr. Prellop's opinion is based on nothing other than counsel for Seaman informing her that Seaman was exposed to Ferox and diesel exhaust "at least once a week, twenty-six weeks per year, over more than a decade." Even if reliance on counsel's suggestion were permitted, Dr. Prellop still had no information about the amount of exposure to which Seaman was subjected "at least once a week," *viz.*, duration, concentration, and other circumstances of the exposure. She provided nothing that would offer the fact-finder a clue as to Seaman's exposure to the allegedly dangerous chemicals.

In short, Dr. Prellop's "background information concerning [Seaman's] exposure . . . is so sadly lacking as to be mere guesswork. The expert[] did not rely on data concerning [Seaman's] exposure that suffices to sustain [her] opinions" under *Daubert* or Rule 702.[40] Dr. Prellop's testimony does not come close to establishing either general or specific causation. The district court did not abuse its discretion in excluding her testimony.[41]

---

[39] Our holding in *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999) is consistent with that of *Bocanegra*. In *Curtis*, although the precise level of chemical exposure was unknown, there was "sufficient information of the level" of exposure, e.g., (1) abnormally high, albeit imprecise, readings on an exposure measuring device, (2) work practices conducive to high exposure, and (3) inadequate factory design. *Curtis*, 174 F.3d at 671–72. Determining that the expert's exposure testimony was supported by more than a mere "paucity of facts," we held that it was admissible. *Id.* at 672 (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 n.10 (5th Cir. 1998) (en banc) (questioning as suspect causation testimony based on a "paucity of facts")).

[40] *See Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198–99 (5th Cir. 1996) (discussing the shortcoming of an expert opinion under Federal Rule of Evidence 703, which requires that if an expert relies on inadmissible facts, they be of a type "reasonably relied on by other experts in the field" (citing FED. R. EVID. 703)).

[41] The reduced burden of establishing proximate cause in Jones Act cases, *see, e.g.*, *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975) (describing the burden as "featherweight"), is irrelevant to our holding. The standards of reliability and credibility to determine the admissibility of expert testimony under *Daubert* and Rule 702 apply regardless whether a seaman's burden on proximate causation is reduced. *See Wills v. Amerada Hess*

## B.    Summary Judgment

### 1.    Applicable Law

Having defined the record, we next determine whether summary judgment was proper.  "Summary judgment is appropriate only 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"[42]  In making our determination, we view the evidence in the light most favorable to the non-moving party, here, Seaman.[43]  "[W]e are not limited to the district court's reasons for its grant of summary judgment.  We may affirm the district court's summary judgment on any ground raised below and supported by the record."[44]

### 2.    Seacor is Entitled to Summary Judgment

Deprived of Dr. Prellop's testimony, Seaman nevertheless urges that summary judgment was improper for two principal reasons:  (1) Other sources provide sufficient causation evidence, and (2) the district court erred by granting summary judgment *sua sponte* on Seacor's purported duty to detect Seaman's cancer irrespective of causation by chemicals aboard Seacor's vessels.  In rejecting these arguments we hold that Seaman failed to establish a genuine issue of material fact that would justify denial of summary judgment.

---

*Corp.*, 379 F.3d 32, 47 (2d Cir. 2004) (stating this rule and emphasizing that the Federal Rules of Evidence and the applicable standard of causation are "distinct issues and do not affect one another") (quotation omitted); *see also Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007) (applying *Daubert* to an expert's causation testimony in a Jones Act case).

[42] *Gray Law LLP v. Transcont. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)).

[43] *Id.*

[44] *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 478 (5th Cir. 2008).

### i.    Lack of Expert Causation Evidence

Seaman first contends that the deposition testimony of Seacor's own expert, Dr. Richard Airhart, establishes both general and specific causation. Our review of Dr. Airhart's deposition makes clear that his testimony does no such thing and instead fully supports his expert report, which emphasized that he was "unable to find any direct carcinogen for Mr. Seaman's disease based on the evidence of his records." The report focused on Seaman's childhood second-hand exposure to cigarette smoke as a more significant risk factor than any demonstrated occupational risk. Dr. Airhart's deposition testimony contains the following representative statements: (1) diesel exhaust has potential carcinogens in it but that "[w]hen you look at how much of a potential it is, especially for bladder cancer, it's not proven"; (2) "I think [second-hand smoke] caused his cancer . . . . That's a little stronger than more probable [than not]. . . . I feel very strongly that this is the most likely cause of [Seaman's cancer]"; and (3) if Seaman worked around carcinogens, information about parts per million, length of exposure, and type of ventilation would all be relevant. In summary, the testimony and report of Seacor's expert, Dr. Airhart, does not support Seaman's position at all. Dr. Airhart's deposition does not reveal the requisite causal link between Seaman's cancer and either Ferox or diesel exhaust. And, without admissible expert evidence in this toxic-tort case, Seaman cannot prove causation.[45]

In an effort to establish his exposure to Ferox and diesel exhaust, Seaman points to the declarations of three of Seaman's co-workers.[46] Each co-worker

---

[45] *See, e.g.*, *Allen*, 102 F.3d at 199; *Atkins v. Ferro Corp.*, 534 F. Supp. 2d 662, 666 (M.D. La. 2008), *aff'd* No. 08-30295, 2009 WL 605743 (5th Cir. Mar. 10, 2009) (per curiam) (unpublished).

[46] We re-emphasize that Dr. Prellop relied on only the suggestion of Seaman's counsel. The co-workers executed their declarations *after* the dates of Dr. Prellop's report and deposition, so she could not have relied on them.

submitted a similar declaration that said: (1) Seacor's vessel was supplied with Ferox; (2) Seaman applied Ferox "regularly," "usually two or three times every week" using a brush or a pneumatic spray gun; (3) the crew never wore safety gear; (3) half of the time that the crew applied Ferox, it did so in enclosed spaces; (4) Seaman inhaled diesel exhaust fumes every day that he served aboard the vessel; (5) the smell of diesel exhaust was noticeable at all times; and (6) Seacor's vessel routinely carried benzene and other chemicals. Without expert testimony to place these declarations in context, they do not demonstrate that Seaman was exposed to whatever may be the allegedly harmful level of Ferox or diesel exhaust.[47]

Seaman lacks competent summary judgment evidence that would create a genuine fact issue regarding the causation of his cancer.

### ii. Seaman's Duty-to-Detect Claim

The district court dismissed all of Seaman's claims based on his failure to offer evidence that exposure to chemicals while aboard Seacor's vessels caused his cancer. Seaman asserts, however, that Seacor never sought summary judgment on his independent cause of action related to Seacor's alleged duty to discover Seaman's symptoms irrespective of whether Ferox or diesel exhaust caused his cancer. According to Seaman, the district court erred in granting summary judgment *sua sponte* on this issue.[48] We hold that to the extent that

---

[47] In the absence of complementary expert evidence, we are skeptical that the declarations of lay co-workers might be of any assistance to Seaman's case. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 49–50 (2d Cir. 2004) ("Absent some technical or professional expertise in detecting and quantifying toxic emissions, [the seaman's] testimony was insufficient to establish dosage amount.").

[48] *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 641 (5th Cir. 2007) (stating that generally a district court may not grant summary judgment *sua sponte* unless it gives the parties ten days notice).

an independent claim existed,[49] the district court did not reversibly err in rejecting that claim.

Seaman's memorandum in opposition to Seacor's motion for summary judgment described his theory related to Seacor's alleged duties to detect his cancer and to provide him medical monitoring. By raising these issues in his opposition brief, Seaman, who makes no representation that he was deprived of an opportunity to present additional evidence, placed them at issue for summary judgment.[50]

According to Seaman, Seacor's duty to detect his bladder cancer fell under Seacor's fundamental Jones Act duty to provide a "reasonably safe place to work."[51] Even assuming *arguendo* that Seacor had a duty to provide medical monitoring to Seaman,[52] he has offered no summary judgment evidence that would establish that Seacor's alleged breach of that duty caused his cancer, i.e.,

---

[49] Seaman's complaint offers almost no indication of this claim and merely alleges that Seacor failed to provide a safe place to work and to "investigate, remedy, and/or warn Mr. Seaman of all hazards."

[50] *See O'Hara v. Gen. Motors Corp.*, 508 F.3d 753, 763–64 (5th Cir. 2007) (recognizing a harmless error exception to the ten-day notice rule when the non-movant had an adequate opportunity to brief the issue and to present its evidence, i.e., notice would have served no valid purpose); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1399 (5th Cir. 1994) ("Because the homeowners have not identified a material fact issue regarding their [claim], it would be a useless procedure to reverse the [d]istrict [c]ourt because it did not allow ten days to elapse before entering summary judgment." (internal quotation marks omitted)).

[51] *See Ober v. Penrod Drilling Co.*, 726 F.2d 1035, 1037 (5th Cir. 1984) (per curiam) (discussing this general duty).

[52] Vessels that carry benzene of greater than 0.5% by volume as bulk cargo must provide medical monitoring to those employees expected to be exposed to a specific quantity of benzene in a given year. *See* 46 C.F.R. § 197.560(b)–(c) (detailing medical-examination requirements); *see also id.* § 197.501 (outlining to which vessels the requirement applies); § 197.505 (defining levels of benzene exposure). It is unclear whether Seaman would have been entitled to medical monitoring. Seaman submitted the report of John Edgar, who described relevant safety guidelines and regulations but who also conceded that he had no data on Seaman's actual exposure.

that Seacor's non-detection "played *any part* — however small — in the development of his" cancer.[53] No one disputes that early diagnosis of bladder cancer is important. And, Seaman contends that Seacor was at fault for his not receiving treatment for bladder cancer until 2006. Seaman disregards the fact, however, that he did see a doctor for hematuria in 2003 and that the doctor recommended seeing a urologist if Seaman's urine did not clear. Yet, it was not until 2006 that Seaman saw a urologist. Seaman offers no evidence that routine medical monitoring would have altered his prognosis any more than did seeing his doctor in 2003, particularly given that Seaman had been experiencing symptoms for *seven to ten years before* his 2005 visit to the infectious disease specialist. As Seaman has not established a genuine issue of material fact in support of this cause of action, Seacor is entitled to summary judgment on all of Seaman's claims.[54]

## IV. CONCLUSION

We affirm the district court's *Daubert*-based exclusion of Dr. Prellop's expert testimony as unreliable. We also affirm the court's grant of summary judgment in favor of Seacor because Seaman failed to demonstrate the presence of a disputed issue of material fact.

AFFIRMED.

---

[53] *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1242–43 (5th Cir. 1994) (requiring evidence of medical causation in a Jones Act case where the plaintiff alleged, *inter alia*, failure to medically monitor).

[54] Seaman also urges that the district court erred in denying his motion to alter or amend the judgment. Determining that that contention is meritless, we affirm the district court's denial of Seaman's motion.