# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 26, 2018

No. 17-40901

Lyle W. Cayce
Clerk

RAMONA L. SMITH, Individually, and As The Temporary Administrator of the Estate of Her deceased husband, Arthur Melton Smith; RAMONA ALLEN; GLENDA ZIMMER; TARA CHEYENNE SMITH,

> Plaintiffs - Appellants

v.

CHRYSLER GROUP, L.L.C., also known as FCA US, L.L.C.,

> Defendant - Appellee

---

Appeals from the United States District Court
for the Eastern District of Texas

---

Before JOLLY, JONES, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This products liability case arises from a deadly car crash. Arthur Melton Smith was killed while driving a 2013 Jeep Wrangler, designed and manufactured by Chrysler Group, L.L.C. Days after the crash, Chrysler sent out a Recall Notice explaining that the transmission oil cooler (TOC) tube of some 2012 and 2013 Jeep Wranglers may leak, which could cause a fire in the underbody of the vehicle.

Mr. Smith's wife and three children contend that Mr. Smith's Jeep had this recall defect and that it caused his Jeep to catch fire and crash. They sued Chrysler asserting claims of strict products liability, negligence, breach of

No. 17-40901

warranty, and violations of the Texas Deceptive Trade Practices Act.  After discovery, Chrysler moved for summary judgment, and upon recommendation of the magistrate judge, the district court entered judgment for Chrysler on all claims.  For the reasons that follow, we affirm.

I.

In the summer of 2013, Mr. Smith was driving his 2013 Jeep Wrangler in Rusk County, Texas, when he veered off the road, traveled 170 feet, and hit a concrete bridge pillar.  He was killed.  An autopsy revealed Mr. Smith, a habitual smoker, had a blood carbon-monoxide level of 18%.

Following the crash, Mr. Smith's wife, Ramona Smith, and their three children—Tara Smith, Ramona Allen, and Glenda Zimmer—(collectively, "the plaintiffs") learned that Chrysler had issued a Recall Notice for 2013 Jeep Wranglers because a defect "exist[ed] in some 2012 and 2013 model year Jeep Wrangler vehicles equipped with an automatic transmission."  Specifically, the TOC tube was placed relatively close to the power steering fluid return tube.  This close proximity risked tube-to-tube contact, which could tear a hole in the TOC tube and cause a leak.  And such leaking transmission fluid could come in contact with an ignition source, causing an underbody fire.  Mr. Smith's Jeep was never inspected for the defect before his accident and the wrecked Jeep was not preserved for experts to conduct a post-accident inspection.[1]  But several days after the crash, Zimmer and Allen returned to the scene of the accident and photographed what appears to be charred grass along the path Mr. Smith's Jeep traveled once it left the road.

The plaintiffs sued Chrysler for strict products liability, negligence, breach of warranty, and violations of the Texas Deceptive Trade Practices Act.

---

[1] According to the Complaint, Mr. Smith's car-insurance company "destroyed" the Jeep.

No. 17-40901

In their view, the recall defect caused a fire to start in the underbody of Mr. Smith's Jeep, filling the passenger compartment with carbon monoxide. Upon being exposed to this carbon monoxide while driving, Mr. Smith lost consciousness and ran off the road and crashed.

As the plaintiffs' case progressed in the district court, the parties designated their experts and provided expert reports. The district court's scheduling order required the plaintiffs to designate expert witnesses and provide expert reports by May 16, 2016. On May 16, the plaintiffs timely filed a report produced by their fire cause expert, Dr. Michael Schulz, in which he opined that he could not determine if the fire was caused by the recall defect. Apparently recognizing the weakness of their case, on August 5, the plaintiffs filed a motion to compel Chrysler to produce documents relating to other fires in any model Jeep Wrangler. On October 7, Chrysler moved for summary judgment and on October 11, Chrysler moved to strike Dr. Schulz's initial expert report on the grounds that it did not meet the standards for the admission of expert testimony set out in *Daubert*. On October 20, the magistrate judge granted plaintiffs' motion to compel at which time Chrysler released ten years' worth of documents relating to incidences of other Jeep fires caused by defects *other than* the specific recall defect the plaintiffs claim caused Mr. Smith's Jeep to crash. Then on December 9, the plaintiffs responded to Chrysler's October 11 summary judgment motion and at that time attached a supplemental expert report from Dr. Schulz. This supplemental report, however, consisted primarily of a rehash of Dr. Schulz's analysis of information that was available to him at the time of his original report, and made only cursory reference to the further information furnished by Chrysler in its supplemental discovery production. He does, however, purport to have examined this new information and, retreating from his earlier inability to come to any conclusion, declares that this new information has

allowed him to draw an "additional conclusion," namely, now he is able to conclude that it is more likely than not that the recall defect caused the fire that caused the crash. On December 16, Chrysler promptly moved to strike Dr. Schulz's supplemental report as untimely and unreliable.

Fast forward to June 26, 2017. At this time, the magistrate judge recommended striking Dr. Schulz's supplemental report and granting summary judgment to Chrysler. The magistrate judge reasoned that the supplemental report was based upon documents that were available to Dr. Schulz prior to the May 2016 expert report deadline and therefore the supplemental report, filed six months after the expert report deadline, was untimely. The magistrate judge also concluded that Dr. Schulz's new opinion was not reliable: "the additional discovery provided by Chrysler about other vehicle defects does not explain why Schulz should be allowed to reverse his opinion that there is sufficient evidence for him to have an opinion about *this* defect." Furthermore, Dr. Schulz offered no analysis to explain how the new information had changed his first conclusion that he could not determine a causal connection between the accident and the alleged defect. On this basis, the magistrate judge proceeded to recommend that Chrysler's summary judgment motion should be granted.

On August 14, 2017, the district court adopted the magistrate judge's recommendations, struck Dr. Schulz's supplemental expert report and opinion, and entered summary judgment for Chrysler. The court agreed that the supplemental report with its new and different opinion was untimely because its conclusion was based on information that was available to Dr. Schulz before the expert report deadline of May 16, 2016. The district court also agreed that the report "would not constitute appropriate summary judgment evidence" because Dr. Schulz's "new findings are highly conclusory." With the report and

new opinion excluded, the district court granted Chrysler's summary judgment motion on all claims.

The plaintiffs now appeal the district court's rulings striking their expert's supplemental report, denying their evidentiary motions to limit the testimony of Chrysler's experts, and granting summary judgment for Chrysler on their design-defect, marketing-defect, negligence, and implied-warranty-of-merchantability claims.[2]

## II.

Because this appeal involves the exclusion of an expert report for the purposes of a summary judgment determination, we first address that evidentiary ruling and then turn to the grant of summary judgment. We review "a district court's exclusion of expert testimony for abuse of discretion" and do not disturb the court's decision unless it is "manifestly erroneous." *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 369 (5th Cir. 2016).

On appeal, the plaintiffs argue that the district court abused its discretion in finding that the supplemental expert report did not rely on new information. Because the new report describes "other defects in Jeep Wranglers that have caused underbody fire" the plaintiffs argue that the expert report filed after the deadline for submitting expert reports is not untimely, but is allowable as supplemental within the meaning of Federal Rule of Civil Procedure 26. Chrysler, on the other hand, characterizes the report as adding nothing relevant to causation that was not known in May 2016.

---

[2] Although the plaintiffs briefly mention manufacturing defect in their opening brief on appeal, they do not appeal the dismissal of their claims alleging breach of implied warranty of fitness for a particular purpose, express warranty, and violations of the Texas Deceptive Trade Practices Act. Moreover, the plaintiffs' Complaint does not allege a manufacturing defect.

Chrysler further argues that Dr. Schulz's new conclusion is not based upon any methodology discernable from the new evidence submitted in his report.

In this supplemental report, when Dr. Schulz outlines, by number and paragraph, the five categories of evidence, upon which he relies to form his new opinion, every such itemization is evidence that was available to him at the time he filed his initial report:  (1) "the observations of Glenda Zimmer," a plaintiff in this litigation, (2) the images and discovery deposition testimony of Zimmer, (3) the fire pattern shown in photographs of the driver's side of Mr. Smith's Jeep, (4) the fire pattern shown in photographs of the sill plate of Mr. Smith's Jeep, and (5) the testimony of (a) Dr. Stash, medical examiner, (b) Dr. Bernard, Chrysler's medical expert, and (c) Ramona Smith, a plaintiff in this litigation.  Dr. Schulz acknowledges in his supplemental report that the above bases are "a partial restatement" of his original report and deposition testimony.  Yet Dr. Schulz's use of the term "review and analysis" of the previously available evidence and the newly disclosed documents is the *sum total* of his description of his methodology applied to come to this new conclusion and opinion.

District courts have "wide latitude in determining the admissibility of expert testimony" and this Court does not disturb the district court's decision unless it is "manifestly erroneous."  *C.F. Bean*, 841 F.3d at 369.  To be sure, Dr. Schulz's supplemental report purports to exclude these other Jeep defects, which were revealed in the newly produced evidence, from the potential causes of the instant Jeep fire, allowing Dr. Schulz to reach a level of certainty in his conclusion that he was previously unable to attain.[3]  But this conclusion tells

---

[3] In Dr. Schulz's original report, he opined that "the origin of the hostile fire incident [in Mr. Smith's Jeep] . . . is properly reported as undetermined."  Dr. Schulz's supplemental report, however, concludes that Mr. Smith's jeep caught fire, more likely than not, because of the recall defect and not the "other defects" identified in the new discovery.

us only that the Jeep in question here did not have the same defect as other Jeeps that caught fire. That is, the new evidence allows him to eliminate a fire connected to these other Jeep defects. It does not allow us to conclude that Mr. Smith's Jeep had a defect[4] nor that the alleged defect could cause a fire or, more particularly, whether it could cause the fire that caused this crash. The district court correctly noted that Dr. Schulz's new findings were "highly conclusory" and did not meet the standard for the admissibility of expert opinion. Dr. Schulz does not explain his methodology for reaching his conclusion, leaving the district court to guess at how he applied the newly produced evidence to form his new conclusion. It is certainly clear however, that none of the instances of Jeep fires produced by Chrysler related to the recall defect at issue here. *Cf. Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) ("The trial court was not required to accept [a fire expert's] opinion at face value just because [the fire expert] was experienced in examining post-collision fuel-fed fires."); *see also Sims v. Kia Motors of America, Inc.*, 839 F.3d 393, 401–03 (5th Cir. 2016).[5]

---

[4] Chrysler has also produced uncontested evidence that Jeep began placing an interim fix to cure the recall defect on all Jeep Wranglers produced after August 22, 2012. Mr. Smith's Jeep was produced on September 5, 2012.

[5] Our recent opinion in *Sims* forecloses the plaintiffs' arguments for the admissibility of Dr. Schulz's supplemental report. There we found that a district court did not abuse its discretion in excluding the expert report and testimony of a fuel tank expert who travelled to the crash site, inspected both the damaged vehicle and an undamaged model, ran computer simulations and employed a differential diagnostic approach to determine that a gas tank defect caused a vehicle fire. Here, Dr. Schulz did not have access to the damaged vehicle, did not run simulations, did not purport to employ a differential diagnostic approach to "rule out" "'all other likely alternatives' using 'generally accepted diagnostic principles,'" and did not even attempt to demonstrate "some scientific basis for 'ruling in' the phenomenon [he] allege[s]." *Id.* at 401–02 (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 246 (5th Cir. 2002)); *see also Moore v. Ashland*, 151 F.3d 269, 278 (5th Cir. 1998 (en banc) (excluding expert in part because he "gave no reason why these items were helpful in reaching his conclusion on causation").

No. 17-40901

To the point, Dr. Schulz's supplemental report failed adequately to connect the dots between the newly disclosed information and his conclusion, and accordingly, the district court did not abuse its discretion in excluding the report.    We thus affirm the district court's exclusion of Dr. Schulz's supplemental report.[6]

### III.

We next examine whether the plaintiffs offered other sufficient evidence to survive summary judgment.  We review a district court's grant of summary judgment de novo, viewing all the facts and evidence in the light most favorable to the non-movant.  *C.F. Bean*, 841 F.3d at 370.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *C.F. Bean*, 841 F.3d at 370.

### A.

As to their claims for design defect, marketing defect, and negligence under Texas law, the plaintiffs must show (1) an unreasonably dangerous defect that (2) caused Mr. Smith's death.  *See Wright v. Ford Motor Co.*, 508 F.3d 263, 275 (5th Cir. 2007) (marketing defect); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (design defect); *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 857 (Tex. App. 2007) ("[A]ppellants alleged no negligence other than conduct relating to whether the [product] was unreasonably dangerous when sold.  As a result, appellants' negligence

---

[6] Because Dr. Schulz's report is an inadmissible expert opinion for the reasons stated above, we do not address Chrysler's argument that the report was untimely under Rule 26 of the Federal Rules of Civil Procedure.

theories are encompassed and subsumed in their defective product theories, and appellants' burden at trial would be to prove injury resulting from a product defect."). The district court held that the plaintiffs failed to offer sufficient evidence to prove both defect and causation and that their failure to produce expert testimony supporting their theory of causation was critical.

We repeat ourselves to say that in their complaint, the plaintiffs allege that Mr. Smith's Jeep was defective because "the power steering line may contact and wear a hole in the [TOC] line" and the Jeep lacked adequate warnings about the defect.[7] For purposes of this appeal, we will assume without deciding that Mr. Smith's Jeep was defective and lacked adequate warnings. We thus proceed straight to causation.

The plaintiffs point to multiple bases of circumstantial evidence to argue that they have produced sufficient evidence that the recall defect caused the fire that caused the wreck that caused Mr. Smith's death. First, they present the Recall Notice which states that the transmission oil cooler tube on "some 2012 and 2013 model year Jeep Wrangler vehicles . . . . may inadvertently come in contact with the power steering fluid return tube" which "could eventually cause the transmission oil cooler tube to develop a wear hole and leak" which "could cause transmission damage and if the leaking transmission fluid comes in contact with an ignition source, cause an underbody fire." Second, the plaintiffs point to Mr. Smith's 18% blood carbon-monoxide level which they argue is evidence of a pre-crash underbody fire consistent with the fire possibility mentioned in the Recall Notice. Third, the plaintiffs put forth

---

[7] On appeal, the plaintiffs attempt to narrow their allegation, arguing that the Jeep was defectively designed because the TOC tube and the power steering fluid return tube were "less than 1/3 [of an inch] away from each other at their closest point."

eyewitness accounts of burn marks on the grass that followed the path of Mr. Smith's Jeep that they argue are evidence of a pre-crash fire.[8]

Finally, the plaintiffs offer an expert to show causation: Mr. Andrew Webb, an accident reconstructionist. With Dr. Schulz excluded, this accident reconstructionist is the only expert they present. When asked whether he had "an opinion about whether the defect in the Smiths' Jeep proximately caused the Jeep to crash," Mr. Webb replied, "Based on the evidence, yes, sir. . . . [T]he vehicle caught on fire prior to hitting the pillar and the byproducts of combustion impaired the driver." A careful look at Mr. Webb's expertise demonstrates that he is not the expert the plaintiffs need to ultimately establish their case. The plaintiffs must show the alleged defect, a hole in the TOC line, *caused* the fire to which Mr. Webb refers. Mr. Webb offers no opinion on that point. Instead, Mr. Webb testified that he did not investigate or "try to render an opinion or conclusion as to the cause and origin of the fire," leaving that "to the fire expert."[9] But, as we have seen, Dr. Schulz could not carry the ball that had been handed to him.

The absence of testimony from a fire expert is critical, particularly here where there was no evidence that this alleged defect had caused a fire in any other Jeep. Under Texas law, expert testimony is "required when an issue involves matters beyond jurors' common understanding." *Mack Trucks, Inc.*, 206 S.W.3d at 583. Further, "[w]hether expert testimony is necessary to prove a matter or theory is a question of law." *Id.* Texas courts have consistently

---

[8] The plaintiffs also point to the burn damage on the driver's side of Mr. Smith's Jeep and the burn damage on the base of the pillar that Smith's Jeep ran into. But those arguments are absent from their summary-judgment response below. The district court did not abuse its discretion in refusing to consider this late evidence. *See Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 846 (5th Cir. 2010).

[9] The other potential experts that the plaintiffs proffer, Ms. Froehlich, Mr. Wilkinson, and Mr. Brookes, offer evidence of defect but not causation.

held that the cause of an engine fire is beyond the common experience and understanding of a lay juror. *See, e.g.*, *id.* ("A lay juror's general experience and common knowledge do not extend to whether design defects such as those alleged in this case caused releases of diesel fuel during a rollover accident."); *see also Sims v. Kia Motors of America, Inc.*, 839 F.3d at 409 (in vehicle fire case "expert testimony is crucial in establishing that the alleged design defect caused the injury"); *C & M Cooled Engine v. Cub Cadet LLC*, 348 F. App'x 968 (5th Cir. 2009) (expert testimony required to determine cause of lawnmower fire); c*f. Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 348 (Tex. 2015) (expert required to determine cause of chemical fire); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004) ("[W]e have consistently required competent expert testimony and objective proof that a defect caused the acceleration. . . . These requirements are not peculiar to unintended acceleration cases.").

The case authority makes clear that the district court was within its discretion in holding that testimony from a fire expert was necessary to establish causation. This case illustrates the type of complex causation theory that requires "expert testimony and objective proof."[10] *Gharda*, 464 S.W.3d at 348. Here, the plaintiffs were required to produce evidence that a defect in the Jeep's transmission oil cooler caused a leak that caused transmission fluid to come in contact with an ignition source that caused the fire. The plaintiffs have been unable to produce such expert testimony. Without such an expert,

---

[10] In the Recall Notice itself, we count at least four conditional events that must occur for the recall defect to cause an underbody fire: "The [TOC] tube . . . *may* inadvertently come into contact with the power steering fluid return tube. This tube-to-tube contact *could eventually* cause the [TOC] tube to develop a wear hole and leak. A loss of transmission fluid *could* cause transmission damage and *if* the leaking transmission fluid comes in contact with an ignition source, cause an underbody fire."

No. 17-40901

the plaintiffs have not met their burden of production under Texas law.[11]  *See Gharda USA, Inc.*, 464 S.W.3d at 353 ("[O]ur holding that the plaintiffs must have supported their causation theory with expert testimony prohibits the jury from inferring causation based on this circumstantial evidence.").  The plaintiffs' failure to produce a fire expert who can identify the cause of the fire is therefore fatal to their success.

We recognize that, had the Jeep been preserved, the plaintiffs' expert may well have been better able to connect the dots to these items of evidence. But on the record presented to us, we hold that the plaintiffs fail to offer sufficient evidence to establish a triable case that the defect caused the fire and crash of Mr. Smith's Jeep.

### B.

Because the plaintiffs' strict liability claims must be dismissed, so too must their implied-warranty-of-merchantability claim.  *See Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 665 (Tex. 1999) ("An uncrashworthy vehicle cannot be unfit for ordinary use but not unreasonably dangerous, nor can it be unreasonably dangerous but fit for ordinary use; it must be both or neither."); *Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 684 (Tex. App. 2000) (explaining that a Jury Charge for implied warranty of

---

[11] The plaintiffs identify *Flock v. Scripto-Tokai Corp.* as an example of circumstantial evidence alone being sufficient to demonstrate that a defect caused a fire.  319 F.3d 231 (5th Cir. 2003).  The facts of that case, however, are demonstrably different from the precedent cited above requiring expert testimony.  At issue in *Flock* was whether a child started a fire by using a cigarette lighter.  We held that there was sufficient evidence of the fire's origin because the lighter was the only incendiary device in the room where the fire originated. There are innumerable potential causes of a vehicle engine fire.  The factors involved in pinpointing the cause of an automobile fire are quintessentially "scientific questions, including questions of chemistry, physics, and electrical engineering, outside the common understanding of a layperson." *Cf. Andrews v. Dial Corp.*, 143 F.Supp.3d 522, 529 (W.D. Tex. 2015).  For the same reason, the plaintiffs' reliance on *Scott v. Dorel Juvenile Group, Inc.* is inapposite.  456 F. App'x 450 (5th Cir. 2012) (considering defect in kitchen cabinet child safety latch).

No. 17-40901

merchantability must "inquire whether the breach proximately *caused* the plaintiff's injuries, as it would in a crashworthiness or strict products liability case." (emphasis added)).  In Texas, "[p]roducing or proximate cause is an element of . . . negligence, misrepresentation, breach of warranty, and design, manufacturing, and marketing defects." *Mack Trucks, Inc.*, 206 S.W.3d at 582.  The plaintiffs' implied warranty claim must suffer the same fate as their other claims because they have failed to produce evidence of proximate causation.

IV.

After the district court entered final judgment in favor of Chrysler, Chrysler filed its bill of costs requesting $52,372.88.  The plaintiffs objected to the bill of costs, primarily citing their limited economic hardship and Chrysler's enormous financial resources.   Ultimately, the district court overruled most of the plaintiffs' general objections but granted their specific objection to Chrysler's request to recover costs for both paper transcripts and video recordings of the same deposition and awarded Chrysler costs in the amount of $29,412.29.

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54.  Such costs include fees for the clerk/marshal, printed or electronically recorded transcripts, printing, witnesses, and making copies.  28 U.S.C. § 1920 (2012).  "Only when a clear abuse of discretion is shown can an award of cost be overturned." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006).

The plaintiffs do not dispute that Chrysler is the prevailing party under the district court's order or that the costs awarded are recoverable under § 1920.  Instead, they argue the district court abused its discretion in awarding costs to Chrysler *at all* in the light of their "impoverished condition" and good faith in bringing suit.

13

No. 17-40901

In support of their argument, the plaintiffs cite to *Pacheco v. Mineta*, wherein this Court explained that a district court *may*, but is not required to, deny a prevailing party costs where suit was brought in good faith *and* denial is based on at least one of the following factors:   "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources."   448 F.3d at 794. Importantly, we withheld judgment on whether "any of [the above factors] is a sufficient reason to deny costs."   *Id.* at 794 n.18.

We can assume that the plaintiffs brought suit in good faith and their financial condition is dire; even so the district court was not required to deny Chrysler its costs because of its comparative ability to more easily bear the costs.   *See, e.g.*, *Moore v. CITGO Refining & Chemicals Company, L.P.*, 735 F.3d 309, 319–20 (5th Cir. 2013) ("[R]educing or eliminating a prevailing party's cost award based on its wealth—either relative or absolute—is impermissible as a matter of law.").   This point is especially applicable in the light of the "strong presumption that the prevailing party will be awarded costs."   *Pacheco*, 448 F.3d at 793.   Here, the district court carefully and thoroughly examined the factors outlined in *Pacheco* and determined that the plaintiffs had not overcome the presumption that Chrysler was entitled to costs.   Although the court sympathetically found that the plaintiffs had established financial hardship, it felt compelled to overrule their general objection because they had not established misconduct by Chrysler, their suit did not present a close and difficult issue of unsettled law, and their case did not confer a substantial benefit to the public.   Citing *Moore* and the strong presumption toward awarding costs in Federal Rule of Civil Procedure 54, the district court declined to withhold costs on the basis of financial hardship

No. 17-40901

alone.  We can find no error in the district court's methodology or conclusion, and conclude the district court acted within its discretion in its award of costs.

V.

In sum, we hold that the district court did not abuse its discretion in excluding the plaintiffs' untimely expert report and affirm the district court's grant of summary judgment for Chrysler on all claims.[12]  Further, the district court did not abuse its discretion in awarding costs to Chrysler.  Accordingly, the judgment of the district court is in all aspects

AFFIRMED.

---

[12] Because we hold that the plaintiffs failed to create a genuine issue of material fact as to causation, we need not reach the further questions related to challenges to the defendant's experts.

15