# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 29, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30297

_____

Michael Braggs,

*Plaintiff—Appellant*,

*versus*

BP Exploration & Production, Incorporated; BP America Production Company; BP, P.L.C.; Transocean Holdings, L.L.C.; Transocean Deepwater, Incorporated; Transocean Offshore Deepwater Drilling, Incorporated; Halliburton Energy Services, Incorporated,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:10-MD-2179, 2:17-CV-3887

_____

Before Richman, *Chief Judge*, and Graves and Wilson, *Circuit Judges*.

Per Curiam:[*]

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30297

This case involves a toxic tort action arising from Michael Braggs's exposure to crude oil and chemical dispersants while assisting with the cleanup of the *Deepwater Horizon* oil spill.  The district court granted summary judgment because Braggs was unable to provide evidence of medical causation through admissible expert testimony.  We affirm.

## I

In 2010, Michael Braggs joined the cleanup effort following the *Deepwater Horizon* oil spill.  For approximately ten months, Braggs worked in many capacities along the Alabama coast.  He cleaned various vessels that navigated oil-contaminated waters.  He deployed and removed contaminated booms, which served as floating barriers to contain the oil in the Gulf of Mexico.  He picked up oil, tar balls, and oil-covered debris from various beaches along Alabama's shoreline.  In these capacities, Braggs was exposed to crude oil and chemical dispersants in the water and air.

In 2017, Braggs filed this action against BP Exploration & Production, Inc. (BP) and affiliated companies to recover for the alleged injuries he sustained during the *Deepwater Horizon* cleanup.[1]  According to Braggs, his exposure to crude oil and chemical dispersants caused him to develop several medical conditions.  Those included, inter alia, rashes, headaches, dizziness, coughing, wheezing, gastroesophageal pain, and vision loss.

To support his claim that toxic exposure caused these medical conditions, Braggs offered the report and testimony of Dr. Jerald Cook, a retired Navy physician with expertise in occupational medicine and

---

[1] Braggs originally filed a "Short Form Joinder" in 2011 to join the multidistrict litigation arising from the *Deepwater Horizon* oil spill.  In 2017, the presiding judge ordered the plaintiffs who had not settled to file individual lawsuits.  After consolidated discovery, the presiding judge severed the cases, and Braggs's case was assigned to Judge Zainey.

environmental toxicology.[2] Cook's report addressed the likelihood that toxic exposure during the *Deepwater Horizon* cleanup caused certain medical conditions among the cleanup workers. After providing a "general causation analysis," Cook concluded that a variety of respiratory, dermal, and ocular conditions "can occur in individuals exposed to crude oil, including weathered crude oil, during oil spill response and cleanup work."

BP moved to exclude Cook's testimony in accordance with Federal Rule of Evidence 702 because it failed to offer evidence of general causation. BP then moved for summary judgment because Braggs failed to raise a fact question as to an essential element of the case. The district court granted both motions. The court concluded the general causation report did not provide relevant and reliable expert testimony,[3] and therefore, BP was entitled to summary judgment. Braggs timely appealed.[4]

---

[2] Multiple versions of Cook's general causation report have been offered by plaintiffs in similar cases. Here, BP included the May 31, 2022 version of Cook's report with its motion in limine and the June 21, 2022 version of Cook's report with its motion for summary judgment. Braggs offered the June report to establish general causation. The district court noted the discrepancy between the versions "has no effect on the disposition of the motion[] for summary judgment in the captioned case[]."

[3] Judge Zainey adopted the reasoning provided by other sections of the court, specifically Judges Vance, Barbier, Morgan, Milazzo, and Ashe. Other sections of the court excluded Cook's report because it failed "to identify the level of exposure to a relevant chemical that can cause the conditions asserted in plaintiff's complaint render[ing] his opinion unreliable, unhelpful, and incapable of establishing general causation." *Harris v. BP Expl. & Prod., Inc.*, No. 17-4342, 2022 WL 2789037, at *7 (E.D. La. July 15, 2022) (Vance, J.). In other words, "Cook fail[ed] to identify the harmful dose of any chemical to which [plaintiff] was exposed that would cause the development in the general population of the adverse health conditions or symptoms [plaintiff] alleges." *Johns v. BP Expl. & Prod., Inc.*, No. 17-3304, 2022 WL 1811088, at *4 (E.D. La. June 2, 2022) (Ashe, J.), *aff'd on other grounds, sub nom. Street v. BP Expl. & Prod., Inc.*, 85 F.4th 266 (5th Cir. 2023).

[4] Fed. R. App. P. 4(a)(1)(A).

## II

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[5] the Supreme Court provided the analytical framework for determining whether expert testimony is admissible under Rule 702. Courts must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue."[6] More pointedly, the critical inquiry is "whether the expert testimony is both reliable and relevant."[7] The party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence.[8]

Braggs challenges the district court's grant of summary judgment and asserts Cook's expert testimony satisfies *Daubert*. He maintains Cook's general causation report was based on "state-of-the-art, peer-reviewed science" and faithfully followed the scientific method. He further contends the report establishes general causation in accordance with *Daubert* because "it includes numerous empirical studies that show health hazards to the general population from exposure to crude oil."

We "review the admission or exclusion of expert testimony for an abuse of discretion,"[9] affording the district court "[w]ide latitude"[10] in its

---

[5] 509 U.S. 579 (1993).

[6] *Id.* at 592-93.

[7] *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004) (citing *Daubert*, 509 U.S. at 589).

[8] *See Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

[9] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citing *St. Martin v. Mobil Expl. & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000)).

[10] *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012).

determination. We "will not find error unless the ruling is *manifestly erroneous*."[11] "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law."[12] We review challenges to summary judgment de novo, applying the same legal standards as the district court.[13] Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] We construe all facts and inferences in the light most favorable to the nonmoving party.[15]

## A

Plaintiffs alleging injury due to toxic exposure must prove both general and specific causation.[16] General causation exists if "a substance is capable of causing a particular injury or condition in the general population."[17] Specific causation exists if the "substance caused a particular individual's injury."[18] "Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence."[19]

Our court has frequently addressed what general causation experts, such as Cook, must show when a plaintiff alleges injury from toxic exposure.

---

[11] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (citations omitted).

[12] *Id.* (internal quotation marks omitted) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)).

[13] *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 749 (5th Cir. 2018).

[14] Fed. R. Civ. P. 56(a).

[15] *See Smith*, 909 F.3d at 749.

[16] *See, e.g.*, *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).

[17] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 468-69 (5th Cir. 2012) (quoting *Knight*, 482 F.3d at 351).

[18] *Id.* (quoting *Knight*, 482 F.3d at 351).

[19] *Knight*, 482 F.3d at 351.

No. 23-30297

"[T]he expert must first demonstrate that the chemical at issue is actually capable of harming individuals in the general population . . . ."[20]  In doing so, the expert must identify "the harmful level of exposure to a chemical" at which physical symptoms manifest.[21]  Put differently, they must determine not only whether a chemical can cause certain health effects, but also at what level of exposure those health effects appear.[22]  Our court has described this to be a "minimal fact[] necessary to sustain the plaintiffs' burden in a toxic tort case."[23]

Braggs concedes Cook's report fails to identify the harmful level of exposure capable of causing his alleged medical conditions.  Nevertheless, Braggs contends any deficiency in the report regarding the absence of this information is a result of BP's failure to collect exposure data for the *Deepwater Horizon* cleanup workers.  He argues we "should not penalize plaintiffs for the absence of data that BP should have collected."  He further asserts the "unique circumstances" of the *Deepwater Horizon* oil spill require a different standard for establishing general causation.  These arguments fail for two reasons.

---

[20] *Johnson*, 685 F.3d at 469.

[21] *See Allen v. Pa. Eng'r Corp.*, 102 F.3d 194, 199 (5th Cir. 1996); *see also Barrington v. BP Expl. & Prod., Inc.*, No. 23-30343, 2024 WL 400191, at *2 (5th Cir. Feb. 2, 2024) (per curiam) (unpublished) (noting the expert report failed to identify the "necessary dose of exposure to crude oil or oil dispersant for any of [the plaintiff's] complained-of symptoms to manifest in the general population.").

[22] *See McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020) (per curiam) (unpublished) (expert testimony did not "provide conclusive findings on what exposure level of Corexit is hazardous to humans"); *Seaman v. Seacor Marine L.L.C.*, 326 F. App'x 721, 726-27 (5th Cir. 2009) (per curiam) (unpublished) (expert failed to establish general causation because "she provides no clue regarding what would be a harmful level of Ferox exposure").

[23] *Allen*, 102 F.3d at 199.

First, the supposed implausibility of "pinpoint[ing] the exact levels of [Braggs's] exposure to the toxic substances unleashed during the spill" has no bearing on the general causation inquiry. General causation does not depend upon particular sampling taken from the incident in question.[24] Instead, a general causation expert must assess whether the type of injury at issue can be caused by a particular toxin in the general population.[25] Cook's failure to identify the level of exposure capable of causing the alleged injuries renders his opinion unreliable.[26] His expert testimony does not establish general causation in accordance with *Daubert*.

Second, the district court correctly applied our toxic tort jurisprudence regarding general causation, and therefore, did not abuse its discretion.[27] Braggs cites no case in which we have abrogated the requirement that a general causation expert identify the harmful level of toxic exposure in the general population. While the *Deepwater Horizon* oil spill was a unique environmental catastrophe, the district court would have erred by disregarding our toxic tort precedent and creating a new general causation standard. Braggs's assertion that the district court "requir[ed] Dr. Cook to meet a requirement in his opinions that top-tier scientists . . . have not be able to do" ignores *Daubert* and its progeny. Our court has consistently

---

[24] *See Byrd v. BP Expl. & Prod., Inc.*, No. 22-30654, 2023 WL 4046280, at *2 (5th Cir. June 16, 2023) (per curiam) (unpublished) ("Exposure data collected (or not) from the incident almost always bears on *specific* causation.").

[25] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 468-69 (5th Cir. 2012) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)).

[26] *See Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) ("Where an expert's opinion is based on insufficient information, the analysis is unreliable.").

[27] *Kim v. Am. Honda Motor Co., Inc.*, 86 F.4th 150, 162 (5th Cir. 2023) (noting a district court did not abuse its discretion when it properly "analyzed the relevancy, reliability, and potential helpfulness" of the expert's testimony).

recognized "the law cannot wait for future scientific investigation and research."[28] Courts "must resolve cases . . . on the basis of scientific knowledge that is currently available."[29] Accordingly, the district court did not abuse its discretion by applying our current toxic tort jurisprudence and excluding Cook's general causation testimony.

To the extent Braggs argues his "temporary symptoms" require the application of a different general causation standard, we consider the argument forfeited as he cites no authority to support such a contention.[30] Without Cook's expert testimony, Braggs fails to provide reliable and relevant expert testimony as required by *Daubert* and Rule 702 regarding general causation. He has not demonstrated a genuine dispute of material fact pertaining to his toxic exposure claim. The district court, therefore, did not err in granting summary judgment.[31]

\*    \*    \*

For the foregoing reasons, we AFFIRM.

---

[28] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

[29] *Id*.

[30] *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal." (citations omitted)); FED. R. APP. P. 28(a)(8)(A) (requiring appellant's argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

[31] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").